905 So.2d 1017 (2005)
STATE of Florida, DEPARTMENT OF REVENUE, Appellant,
v.
LOCKHEED MARTIN CORPORATION, Appellee.
No. 1D04-4239.
District Court of Appeal of Florida, First District.
July 5, 2005.
*1019 Charlie Christ, Attorney General; Jarrell L. Murchison, Assistant Attorney General, Tallahassee, for Appellant.
J. Michael Huey, Esq. and J. Andrew Bertron, Jr., Esq. of Huey, Guilday, Tucker, Schwartz & Williams, P.A., Tallahassee, for Appellee.
LEWIS, J.
Appellant, the Florida Department of Revenue ("Department"), seeks review of the trial court's Final Judgment in which the court awarded appellee, Lockheed Martin Corporation, a tax refund and interest in the amount of $1,255,182. The Department challenges the trial court's interpretation of section 212.052(2), Florida Statutes (2001), which addresses the tax exemption for certain research and development costs, arguing that because the statute is ambiguous, we should apply the rules of statutory construction and conclude that only labor costs involved in research and development are tax-exempt. However, because we conclude that the language of the statute is unambiguous and agree with the trial court's interpretation that tangible personal property incorporated into research and development prototypes is tax-exempt, we affirm the Final Judgment.
On October 15, 2001, appellee, a corporation primarily engaged in the manufacturing of defense products for the federal government, filed suit against the Department, contesting its denial of appellee's two applications for refunds of sales and use taxes paid on research and development costs and requesting a declaratory judgment. Specifically, appellee asserted that the cost of materials that it incorporated into prototypes was not subject to taxation pursuant to section 212.052(2). Appellee alleged that the Department wrongly denied $948,650.56 of the requested $1,083,498.29 on the ground that the research and development tax exemption was limited only to labor and other types of direct and indirect manufacturing costs and did not extend to the cost of materials.
The Department acknowledges that it has inconsistently interpreted section 212.052(2) since the statute's enactment in 1982. For instance, in its Technical Assistance Advisement ("TAA") 90A-071, the Department explained that "materials (articles of tangible personal property) which become components of the `Products,' as that term is defined by Section 212.052(1)(c), F.S., of research and development, are exempt from sales and use tax." In 1992, appellee's predecessor, Martin Marietta Corporation, received a refund from the Department that included taxes paid on materials that became components of a prototype. However, in 1994, the Department issued TAA 94A-058, rescinding TAA 90A-071 and ordering the company who requested the advisement that it pay sales and use tax on the cost of products removed from finished goods that are used in research and development. In his 2002 deposition, Jeffrey Soff, a tax law specialist with the Department and the author of TAA 94A-058, explained that the direct and indirect manufacturing costs alluded to in the Department's denial of appellee's refund request included items *1020 such as electricity, consumable items such as sandpaper or rags, a pro rata share of insurance on a facility, salary paid to supervisory personnel, and depreciation costs.
Both parties subsequently moved for partial summary judgment. The Department argued that the tax exemption at issue exempted only labor costs expended in research and development, while appellee argued that the exemption also applied to tangible personal property that is incorporated into research and development prototypes. In its Amended Order on Motions for Partial Summary Judgment, the trial court noted that although significant changes in an agency's interpretation of a statute may lead to the conclusion that the wording of the statute is unclear, such is not always the case due to changes in leadership, policy, or political climate. In noting that it was not required to rely on agency expertise to properly interpret words of common usage, the court concluded that the language contained in section 212.052(2) was sufficiently straightforward on its face to support appellee's interpretation. The court found that the Department's interpretation added wording to the statute that the Legislature did not include. The court concluded that section 212.052(2) provided an exemption "for tangible personal property actually incorporated or fabricated into a research and development end product, while excluding all other real and personal property employed in the research and development endeavor." As such, the court granted appellee's summary judgment motion and denied the Department's motion. In its Final Judgment, the court awarded appellee a tax refund and interest in the amount of $1,255,182. This appeal followed.
The issue of statutory construction is subject to de novo review. State v. Burris, 875 So.2d 408, 410 (Fla.2004) (citation omitted). Legislative intent is the polestar that guides a court's statutory construction analysis. State v. J.M., 824 So.2d 105, 109 (Fla.2002) (citations omitted). When a statute is clear, a court may not look behind the statute's plain language or resort to rules of statutory construction to determine the legislative intent. Burris, 875 So.2d at 410; see also Overstreet v. State, 629 So.2d 125, 126 (Fla.1993) (noting that legislative intent must be determined primarily from the language of a statute). This is so because the Legislature is assumed to know the meaning of the words used in the statute and to have expressed its intent through the use of the words. Id. It is only when a statute is ambiguous that a court may resort to the rules of statutory construction. BellSouth Telecomms., Inc. v. Meeks, 863 So.2d 287, 289 (Fla.2003). "`Ambiguity suggests that reasonable persons can find different meaning in the same language.'" State v. Huggins, 802 So.2d 276, 277 (Fla.2001) (quoting Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla.1992)). Administrative construction of a statute, the legislative history of the statute's enactment, and other extraneous matters are properly considered only when the construction of a statute results in a doubtful meaning. Donato v. Am. Tel. & Tel. Co., 767 So.2d 1146, 1153 (Fla.2000); see also Fajardo v. State, 805 So.2d 961, 963-64 (Fla. 2d DCA 2001) (explaining that although virtually every English sentence contains some level of uncertainty, rules of statutory construction are reserved for cases in which a fair reading of the statute leaves a court in genuine doubt about the correct application of the statute).
Section 212.06(1)(b), Florida Statutes (2001), which addresses the Florida sales and use tax, provides, in pertinent part:

*1021 Except as otherwise provided, any person who manufactures, produces, compounds, processes, or fabricates in any manner tangible personal property for his or her own use shall pay a tax upon the cost of the product manufactured, produced, compounded, processed, or fabricated without any deduction therefrom on account of the cost of material used, labor or service costs, or transportation charges, notwithstanding the provisions of s. 212.02 defining "cost price."
Section 212.052(2), Florida Statutes (2001), which addresses the tax exemption for research and development costs, provides, in pertinent part:
Notwithstanding any provision of this chapter to the contrary, any person ... who manufactures, produces, compounds, processes, or fabricates in any manner tangible personal property for such taxpayer's own use directly and solely in research and development shall not be subject to the tax imposed by this chapter upon the cost of the product so manufactured, produced, compounded, processed, or fabricated. However, the tax imposed by this chapter shall be due on the purchase, rental, or repair of real property or tangible personal property employed in research and development which is subject to the tax imposed by this chapter at the time of purchase or rental.
The term "cost" as used in subsection (2) means "cost price" as defined in section 212.02(4), Florida Statutes. § 212.052(1)(b), Fla. Stat. (2001). Section 212.02(4) defines "cost price" to mean "the actual cost of articles of tangible personal property without any deductions therefrom on account of the cost of materials used, labor or service costs, transportation charges, or any expenses whatsoever." The term "product," as used in subsection (2), is defined as "any time, device, technique, prototype, invention, or process which is, was, or may be commercially exploitable." § 212.052(1)(c), Fla. Stat. (2001). The term "tangible personal property" means and includes "personal property which may be seen, weighed, measured, or touched or is in any manner perceptible to the senses, including electric power or energy, boats, motor vehicles, and mobile homes...." § 212.02(19), Fla. Stat. (2001). The term "use" means and includes "the exercise of any right or power over tangible personal property incident to the ownership thereof, or interest therein, except that it does not include the sale at retail of that property in the regular course of business.. . ." § 212.02(20), Fla. Stat. (2001).
The Department relies on its inconsistent interpretations of section 212.052(2) in support of its argument that the statute is ambiguous and worthy of statutory construction. However, as the trial court found, the Department's differing interpretations have no bearing on our reading of the statute given its clear and unambiguous meaning. See Donato, 767 So.2d at 1153. Alternatively, the Department urges that, if we were to find that section 212.052(2) is unambiguous, we should conclude that the second sentence of the statute essentially trumps the first sentence. However, such a construction would render the first sentence meaningless. See Forsythe, 604 So.2d at 456 (noting that courts should avoid interpretations that would render part of a statute meaningless). All parts of a statute must be read together in order to achieve a consistent whole. Id. at 455. Where possible, a court must give full effect to all statutory provisions and construe related provisions in harmony with each other. Id. (citation omitted).
As appellee argues, and as the trial court found, the two sentences contained in section 212.052(2) can be read *1022 together in order to achieve a consistent whole. One of the most obvious differences between the two sentences is that the first addresses tangible personal property that is "use[d] directly and solely in research and development." The second sentence does not contain the directly and solely language, but rather speaks to tangible personal property "employed in research and development." Thus, even if the Department was correct that the Legislature intended that the words "employed" and "use" have the same meaning, the key difference between the two types of tangible personal property is whether the property was directly and solely used in research and development or whether it was merely employed in such. We agree with both the trial court and appellee that tangible personal property incorporated or fabricated into a research and development end product or prototype is directly and solely used in research and development for purposes of section 212.052(2). In contrast, other tangible personal property, such as equipment that is used only in making a prototype, would not be directly and solely used but simply employed in research and development. Our reading of the statute is supported by the fact that the second sentence and the "employed in" language includes the purchase, rental, or repair of real property. Such property, like equipment, cannot be incorporated or fabricated into a prototype.
In conclusion, because we find that section 212.052(2) is clear and unambiguous, we need not consider the Department's interpretation or the statute's legislative history. See Burris, 875 So.2d at 410; Donato, 767 So.2d at 1153; Overstreet, 629 So.2d at 126. We agree with the trial court that appellee is entitled to a tax refund for tangible personal property that was ultimately fabricated into its research and development prototypes.
Accordingly, we AFFIRM the trial court's Final Judgment.
KAHN, C.J., and BROWNING, J., concur.